UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-cr-20858-GAYLES

UNITED STATES OF AMERICA

v.

DANFI GONZALEZ IGUARAN,
              Defendant.
_____/

### ORDER

**THIS CAUSE** comes before the Court on limited remand from the United States Court of Appeals for the Eleventh Circuit.

### I.  BACKGROUND

Defendant Danfi Gonzalez Iguaran pled guilty to one count of conspiracy to possess with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70503(a)(1), 70506(b). On July 31, 2015, this Court sentenced the Defendant to 210 months' imprisonment, five years' supervised release, and a $100 special assessment [ECF No. 59]. The Defendant appealed, arguing for the first time that the Court did not have subject matter jurisdiction because the record does not establish that the vessel in which he was apprehended was subject to the jurisdiction of the United States.

In its opinion dated May 12, 2016, the Eleventh Circuit vacated the Defendant's conviction and remanded the action to this Court for the specific purpose of determining in the first instance whether subject matter jurisdiction exists over this action. *United States v. Iguaran*, 821 F.3d 1335 (11th Cir. 2016) (per curiam). The Court held an evidentiary hearing on August 25, 2016, during which the Government proffered evidence and presented testimony in order to meet their

1

burden of establishing that the vessel upon which the Defendant was apprehended was subject to the jurisdiction of the United States. The Defendant presented no evidence or testimony at the hearing.

## II. LEGAL STANDARD

As the Eleventh Circuit explained in its opinion:

> The MDLEA makes it a crime to conspire to distribute a controlled substance while on board "a vessel subject to the jurisdiction of the United States." 46 U.S.C. §§ 70503(a)(1). The Act also states that "[j]urisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense" and that "[j]urisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a). Based on that language, this Court has "interpreted the 'on board a vessel subject to the jurisdiction of the United States' portion of the MDLEA as a congressionally imposed limit on courts' subject matter jurisdiction, akin to the amount-in-controversy requirement contained in 28 U.S.C. § 1332." *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008); *see also United States v. Betancourth*, 554 F.3d 1329, 1332-33 (11th Cir. 2009). Thus, "for a district court to have adjudicatory authority over a charge that a defendant conspired to violate the substantive crime defined in [the MDLEA], the Government must preliminary show that the conspiracy's vessel was, when apprehended, subject to the jurisdiction of the United States." *De La Garza*, 516 F.3d at 1272 (quotation marks omitted).
>
> The MDLEA identifies various circumstances that would render a vessel subject to the jurisdiction of the United States. For example, "a vessel without nationality" counts as a "vessel subject to the jurisdiction of the United States" for purposes of the MDLEA. 46 U.S.C. § 70502(c)(1)(A). In turn, the term "vessel without nationality" includes "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provision of United States law, to make a claim of nationality or registry for that vessel." *Id.* § 70502(d)(1)(B). Under those definitions, if Iguaran and his coconspirators failed, on request of the United States officials who apprehended them, to "make a claim of nationality," their vessel was "without nationality" and "subject to the jurisdiction of the United States."

*Iguaran*, 821 F.3d 1336-37.

## III. FINDINGS OF FACT

Upon consideration of the record in this case, as well as the evidence and testimony presented by the Government at the evidentiary hearing held on August 25, 2016, the Court makes the following findings of fact:

1. On March 2, 2012, the U.S. Coast Guard Cutter *Confidence* interdicted a go-fast

vessel (the "Subject Vessel") in international waters, approximately fifty-five nautical miles off the northern tip of Colombia.

2. Coast Guard officers and crew (MEC Karl Mailander, and Petty Officers Allred, Krusco, Steed, and Reel) approached the Subject Vessel in a rigid hull inflatable boat (otherwise known as a "small boat").

3. As they approached the Subject Vessel, the officers were able to see that it flew no flags and displayed no markings that would indicate nationality (images of flags, writing, numbers, etc.). *See* Gov't Exs. 1-4.

4. The officers were also able to see three crew members on board the Subject Vessel, later identified as Edwin Garcia-Smith, Wilhton Avenamo Moralez, and Marino Perez Escobar (the "Crew Members").

5. Through YN2 Orber Pereira, a certified Spanish translator, Mailander questioned the Crew Members.

6. The Crew Members failed to identify the master of the Subject Vessel. The Crew Members also failed to identify the nationality of the Subject Vessel and stated that they did not want to make a claim of nationality for the Subject Vessel.

7. Mailander (through Pereira) asked the Crew Members the purpose of their trip. Escobar responded that the Subject Vessel was rented and that they were waiting to refuel another boat.

8. The Crew Members also told the Coast Guard officers that the Subject Vessel's previous and next ports of call were Potete, Colombia.

9. The Crew Members gave incomplete answers to Mailander's other questions.

10. The officers obtained identification documents from the Crew Members that signified that the Crew Members were Colombian nationals. The Crew Members also verbally confirmed

that they were Colombian nationals.

11.     After interviewing the Crew Members, the Coast Guard faxed a Form 1: Action Request to Colombian officials to confirm or determine the nationality of the Subject Vessel. *See* Gov't Ex. 9.

12.     The Colombian officials could not confirm or deny the Subject Vessel's nationality. *See* Gov't Ex. 10.

13.     In his factual proffer entered pursuant to his guilty plea, the Defendant admitted that he, along with his co-defendants, launched the Subject Vessel, loaded with approximately 600 kilograms of cocaine, from Colombia with the intended destination of Central America. [ECF No. 51 at 2].

## IV.   CONCLUSIONS OF LAW

Based on the record and consistent with the evidence and testimony presented, and given that:

(1) the Coast Guard interdicted the Subject Vessel in international waters,

(2) the Subject Vessel flew no flags and otherwise bore no markings that would indicate registration or nationality,

(3) the Crew Members did not identify the master of the Subject Vessel,

(4) the Crew Members made no claim of nationality of the Subject Vessel,

(5) the Coast Guard attempted to secure confirmation of the Subject Vessel's nationality from Colombian officials but was unable to do so, and

(6) no evidence to the contrary was presented by the Defendant,

the Court concludes that the Government has met its burden to establish that the Subject Vessel was a "vessel without nationality," as that term is defined in 46 U.S.C. § 70502(d)(1)(B). And because a vessel without nationality falls within the category of "vessel[s] subject to the jurisdic-

tion of the United States," under the MDLEA, *id.* § 70502(c)(1)(A), the Court concludes that the Subject Vessel was subject to the jurisdiction of the United States when it was interdicted by the Coast Guard. Therefore, subject matter jurisdiction over the Subject Vessel for purposes of the MDLEA exists in this action.

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Defendant's conviction and sentence are hereby **REINSTATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 26th day of August, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE